UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BASIR AHMAD SAFI (A-241-526-132),

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-5728 DC CSK

FINDINGS & RECOMMENDATIONS

Petitioner Basir Ahmad Safi (A-241-526-132), a native and citizen of Afghanistan, filed an amended petition for writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2241.[1] Petitioner served as a translator for the United States Army in Afghanistan from 2008 to 2013. On August 30, 2021, petitioner entered the United States pursuant to the Operation Allies Refuge ("OAR") evacuation effort. On February 27, 2023, petitioner was granted asylum, but on March 5, 2026, the United States Citizenship and Immigration Services ("USCIS") terminated petitioner's asylum status. Petitioner was taken into U.S. Immigration and Customs Enforcement ("ICE") custody on March 11, 2026. On April 8, 2026, petitioner was ordered removed to Afghanistan. This habeas action concerns petitioner's detention. For the reasons that follow, the

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

Court recommends that the petition for writ of habeas corpus be granted and petitioner be immediately released.

## I. FACTUAL BACKGROUND

Petitioner is an Afghan native who served as a translator for the United States Army in Afghanistan from 2008 to 2013. (ECF No. 11 at 1.) On August 30, 2021, petitioner entered the United States pursuant to the Operation Allies Refuge ("OAR") evacuation effort.[2] (Id. at 1-2; ECF No. 1 at 12.) On February 27, 2023, petitioner was granted asylum in the United States. (ECF No. 11 at 2 (citing ECF No. 1 at 13).) On March 5, 2026, the USCIS terminated petitioner's asylum status. (Id. (citing ECF No. 1 at 22).) Petitioner was placed in removal proceedings, and his employment authorization was terminated. (Id.) Petitioner was taken into ICE custody on March 11, 2026.[3] (ECF No. 1 at 5.) On April 8, 2026, an immigration judge found petitioner is "removable/inadmissible" and ordered petitioner removed to Afghanistan.[4] (ECF No. 11 at 2 (citing ECF No. 1 at 20-21).) Petitioner reserved his right to appeal the decision to the Board of Immigration Appeals, but petitioner did not file an appeal. (ECF No. 11 at 2.) The removal order became administratively final on May 8, 2026. (ECF No. 7 at 1.)

Respondents do not contend that petitioner has a criminal history, and do not contest petitioner's factual allegations. (See ECF Nos. 7, 13.) Petitioner has been in continuous ICE detention since March 11, 2026.

///

[2] According to a USCIS website, "OAR" refers to the Operation Allies Refuge ("OAR") evacuation effort announced in July 2021. https://www.uscis.gov/save/information-for-save-users-afghan-arrival-categoriesdocumentation-and-save-responses#_ftn1 (last accessed Sept. 8, 2026).

[3] In the first amended petition, counsel states that petitioner has been in continuous ICE detention since he was ordered removed on April 8, 2026. (ECF No. 11 at 2.) However, in the verified original petition, petitioner states he was taken into immigration custody on March 11, 2026. (ECF No. 1 at 1, 5.) Respondents do not dispute the March 11, 2026 detention date. (See ECF Nos. 7, 13.) The Court finds petitioner has been detained since March 11, 2026.

[4] The removal order states that petitioner "is removable/inadmissible as charged in the Notice to Appear" (ECF No. 7-1 at 3), but the Notice to Appear was not provided. (See Docket.) The parties do not dispute that petitioner was deemed inadmissible, and petitioner does not claim his detention was unauthorized under 8 U.S.C. § 1231(a)(6). Therefore, the omission of this information does not alter this Court's decision.

## II. PROCEDURAL BACKGROUND

On July 23, 2026, petitioner filed his pro se verified petition for writ of habeas corpus. (ECF No. 1.) On July 28, 2026, respondents filed an opposition to the petition. (ECF No. 7.) On August 6, 2026, this Court appointed counsel to represent petitioner. (ECF No. 9.) On August 17, 2026, petitioner's counsel filed a first amended petition. (ECF No. 11.) On August 24, 2026, respondents filed an opposition to the first amended petition and petitioner filed his reply on September 1, 2026. (ECF Nos. 13, 14.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his indefinite detention based on the violation of the following: (1) petitioner's removal is not "reasonably foreseeable," and therefore is unlawful under Zadvydas, 533 U.S. at 678; (2) the Department of Homeland Security's current third country removal process violates petitioner's due process rights; (3) the Department of Homeland Security's third country removal policy is punitive and therefore is unconstitutional. (ECF No. 11 at 6-11.) Respondents first argue that petitioner is subject to detention under 8 U.S.C. § 1231(a)(2), and his original habeas petition was filed while

he was lawfully detained during the mandatory 90-day removal period which did not expire until August 8, 2026. (ECF No. 7 at 1.) After the 90 day period expires, respondents argue that petitioner will be subject to discretionary detention under 8 U.S.C. § 1231(a)(6). (Id.) In their second opposition, respondents solely state that they "do not have any additional information to present regarding petitioner's removal at this time." (ECF No. 13 at 1.)

**A. Claim One: Post-Final Order Detention**

In claim one, petitioner argues that because his removal is not "reasonably foreseeable," his indefinite detention violates Zadvydas, 533 U.S. at 699. (ECF No. 11 at 6-8.)

1. Immigration Detention Framework Post-Final Order Detention

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). The statute provides that when a non-citizen is ordered removed, they shall be removed within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). Although further detention is authorized if the government fails to remove the noncitizen within those 90 days, the statute "does not permit indefinite detention." Zadvydas, 533 U.S. at 689. "[Section] 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90 day removal period has expired, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)). The second category includes a noncitizen "ordered removed who is inadmissible under § 1182." 8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a

repatriation treaty with the receiving country." Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) (citing Zadvydas, 533 U.S. at 684-86). The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6), describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" Zadvydas, 533 U.S. at 692. The Court held that 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention." Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

2. Detention Authority

On April 8, 2026, an immigration judge found petitioner inadmissible and ordered him removed to Afghanistan. (ECF No. 7-1 at 3.) This removal order became final on May 8, 2026 because petitioner did not waive appeal of his removal order, and the 90 day mandatory removal period expired on August 6, 2026. (ECF No. 7 at 1; ECF No. 11 at 7.) The Court finds that petitioner is currently subject to discretionary detention pursuant to 8 U.S.C. § 1231(a)(6).

3. Analysis

The first issue is whether petitioner is entitled to relief under Zadvydas. Respondents argue that petitioner has been in custody less than six months. Petitioner's detention has now exceeded the six-month "presumptively reasonable" period identified by the Court in Zadvydas where petitioner has been continuously detained since March 11, 2026. Petitioner served as a translator for the United States Army in Afghanistan from 2008 to 2013. Respondents do not argue that petitioner is a flight risk or a danger to the community. It appears undisputed that petitioner has no criminal history.

Also, petitioner has persuasively demonstrated that it is not likely that petitioner could be removed to Afghanistan in the reasonably foreseeable future. Petitioner points out that Afghanistan currently has no diplomatic presence in the United States. (ECF No. 11 at 2 (citing Determination Pursuant to the Foreign Missions Act, 87 Fed. Reg. 30323, 30323 (May 18, 2022).) Further, petitioner claims "it does not appear that diplomatic relations between the government of the United States and the government of Afghanistan under the Taliban will resume in the foreseeable future." (Id.)

Other courts agree. In Momand v. Blanche, No. 2:25-cv-2772-GJL, 2026 WL 2603175, at *3 (W.D. Wash. Sept. 3, 2026), the court noted that petitioner's showing that his removal to Afghanistan was unlikely in the reasonably foreseeable future was supported by "the poor diplomacy and lack of repatriation agreement between the United States and Afghanistan." 2026 WL 2603175, at *3 (citing Khan v. Blanche, No. 2:26-CV-02629-TLF, 2026 WL 2445148, at *3 (W.D. Wash. Aug. 20, 2026) (collecting cases); Wazir v. Att'y Gen. of United States, No. 3:26CV526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026) ("Any effort to remove [noncitizens] to Afghanistan runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime controlling Afghanistan."); see also Msharif v. Hernandez, No. 2:26-CV-01121-GJL, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026) ("[D]ata published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada.")). In addition, "Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan." Ahmadzai v. Mullin, No. 26-CV-2641 JAO, 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026); see also Samir v. Wolf, No. 1:25-CV-01397, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026) (taking into account civil conflict and genocide in Afghanistan under Taliban rule); Jalili v. Semaia, No. 5:26-cv-01703-MBK, 2026 WL 1084739, at *3 (C.D. Cal. Apr. 16, 2026) ("There is no current system for removing Afghan nationals back to Afghanistan, given that the United States does not recognize the Taliban government."); Rahimi v. Semaia, No. ED CV 26-00116-DMG (RAO), 2026 WL 246066, at *3 (C.D. Cal. Jan.

27, 2026) ("Petitioner states that there is no 'established practice for repatriating noncitizens like Mr. Rahimi to Afghanistan as the United States does not recognize Taliban as the official government of Afghanistan[.]' ").

Moreover, as argued by petitioner, Zadvydas repudiated the use of "preventative" immigration detention, i.e., detention for the purposes of "protecting the community[,]" where removal is not reasonably foreseeable. See Zadvydas, 533 U.S. at 690-91. Absent such evidence, petitioner's current detention is disconnected from the potential justifications for immigration detention and appears to constitute "preventative" immigration detention. This is not permitted under Zadvydas. "When, as here, the detention is preventative and potentially indefinite, Zadvydas requires more." Xiao, 2026 WL 1707089, at *4.

Thus, the burden shifts to respondents to demonstrate the reasonable foreseeability of petitioner's removal. Zadvydas, 533 U.S. at 701. In this case, respondents did not address Zadvydas at all, and did not argue that petitioner's removal is reasonably foreseeable. (See ECF Nos. 7 at 1; 13 at 1.) Respondents have therefore failed to meet their burden under the burden shifting framework of Zadvydas, and petitioner's continued detention is "unreasonable and no longer authorized." Zadvydas, 533 U.S. at 680. This Court recommends that the habeas petition be granted on claim one and respondents be ordered to immediately release petitioner.

**B. Petitioner's Other Claims for Relief**

Petitioner's second and third claims are not ripe. Respondents do not argue that they are attempting to remove petitioner to a third country, and there is no evidence in the record demonstrating such an attempt. Thus, petitioner's second and third claims should be dismissed without prejudice.

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The amended petition for writ of habeas corpus (ECF No. 11) be GRANTED as to claim one.
2. Petitioner Basir Ahmad Safi (A-241-526-132) be immediately released from ICE custody. If respondents have custody of petitioner's documents (e.g., identification,

passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.

3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 11, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/safi5728.157.REV..2241.imm.RELEASE